**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **PURSER TRUCK SALES, INC.** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action** |
| | : | **No. 5:07-cv-15 (CAR)** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Purser Truck Sales, Inc. ("Purser") filed this lawsuit to recover penalties assessed by the Internal Revenue Service ("IRS") for its failure to file a Form 8300 disclosure statement with regard to five transactions in 2001.  The Form 8300 disclosure is required any time a business receives more than $10,000 in cash in a single transaction or series of related transactions.  26 U.S.C. § 6050I(a).  Purser does not contest the finding that it failed to file the necessary disclosures with regard to four of the five transactions in question, but contends that IRS erroneously imposed the maximum penalty, which is authorized only in cases where the failure to file is due to "intentional disregard" of the filing requirement.  26 U.S.C. § 6721(e). Both Purser and Defendant United States ("the Government") have moved for summary judgment.  As set forth more fully below, there genuine issues of material fact that require

1

determination by a finder of fact.  Accordingly, both motions (Docs. 20, 25) are
**DENIED**.

## FACTUAL BACKGROUND

Purser Truck Sales is a corporation engaged primarily in the business of buying
and selling used vehicles.  Its sole shareholder is James Purser ("Mr. Purser").  During
the relevant time period, its only officers were its President and CEO, James Purser,
and its Secretary/Treasurer, Cheryl Purser ("Mrs. Purser).  Mr. Purser handled the
"sales end" of the business, supervising the sales staff and approving financing and
vehicle sales.  J. Purser Dep. 8.  Mrs. Purser acted as office manager, overseeing
billing and collections, accounts payable, payroll, personnel, bookkeeping, and similar
matters. C. Purser Dep. 10.  Among her other duties, Mrs. Purser was responsible for
filing tax forms such as the Form 8300.

The penalties that Purser seeks to recover were assessed following the second
of two compliance examinations conducted by IRS.  The first took place in 1997, the
second in 2002.  In March 1997, IRS notified Purser that it intended to conduct a
Form 8300 compliance examination for the year 1996.  At the time she received the
notice, Mrs. Purser was not aware of Form 8300 and the reporting requirements of 26
U.S.C. § 6050I.   The IRS agent who conducted the examination, Kim Joiner,
explained the requirements to Mrs. Purser, who reviewed her files and located four

2

transactions for which a Form 8300 was required.  IRS assessed Purser with penalties totaling $400, for four violations of Section 6050I and four violations of the corresponding obligation to send notice to the customer of the Form 8300 filing requirement.  Agent Joiner met with Mrs. Purser and briefed her as to the filing requirements.  Subsequent to that briefing, Agent Joiner issued a written report specifically noting that Purser had failed to keep adequate records of the type of negotiable instruments received from the purchaser, making it difficult for IRS to verify compliance with the Form 8300 filing requirements.  Agent Joiner's letter instructed that "receipt books should identify the type of payment received from your customers (i.e. cashiers check, money order, business check, personal check, etc.)." Govt. Ex. 2(c).

In March 2002, Purser received notice of a second compliance examination scheduled for April 24, 2002.  Purser Truck Sales had not filed a single Form 8300 for the years 2000 and 2001.  Upon receipt of the notice of examination, Mrs. Purser conducted a review of all non-financed sales transactions for 2000 and 2001 and identified eight transactions for which she believed a Form 8300 was necessary.  She prepared and mailed Forms for the eight transactions shortly before the examination was scheduled.  Of those eight transactions, IRS cited Purser for failing to file timely Form 8300 disclosures as to the following five transactions:

1.      May 5, 2001 sale to Jose M. Cabrera for $12,800 in cash;

2.      June 23, 2001 sale to James S. Garnto for $19,308;

3.      July 14, 2001 sale to Donald Ludlum for $16,418 in cash;

4.      Sale to James V. Horn for $10,298 in cash, in two separate installments

         on August 10 and August 16, 2001;

5.      October 1, 2001 sale to Tracy Hightower for $16,600 in cash.

IRS determined that two of the eight transactions did not require a Form 8300 because they involved cashier's checks in excess of $10,000, which are not defined as a "cash equivalent" under Section 6050I.[1]   A third transaction was not cited because it occurred in 2000, which was not subject to the IRS inquiry.  Purser admits that it was required to file Forms 8300 for four of the five transactions for which it was cited, but

---

[1]With regard to the requirements of 26 U.S.C. § 6050I, "cash" has been defined by regulation as

(A) The coin and currency of the United States or of any other country, which circulate in and are customarily used and accepted as money in the country in which issued; and

(B) A cashier's check (by whatever name called, including "treasurer's check" and "bank check"), bank draft, traveler's check, or money order having a face amount of not more than $10,000--

    (1) Received in a designated reporting transaction as defined in paragraph (c)(1)(iii) of this section (except as provided in paragraphs (c)(1)(iv), (v), and (vi) of this section), or

    (2) Received in any transaction in which the recipient knows that such instrument is being used in an attempt to avoid the reporting of the transaction under section 6050I and this section.

26 C.F.R. 1.6050I-1(c)(1)(ii).  Cashier's checks in excess of $10,000 are not subject to the reporting requirements because they must be reported by the financial institution.

contends that no Form 8300 was required for  James S. Garnto's June 23 purchase because he also paid for his vehicle with a cashier's check in excess of $10,000.

On April 24, 2002, IRS Agents Mary Carter and Rose Martinez interviewed Mrs. Purser and reviewed the files that Mrs. Purser provided of sales that were not financed in-house.  The agents did not request to review any other files or seek to review Purser's ledger cards or spreadsheets.  On April 25, 2001, Mrs. Purser mailed Agent Carter a letter to explain the reason for her failure to comply with the Form 8300 disclosure requirements.  Her letter states, in its entirety:

> As per your request, this letter is to explain why a Form 8300 was not filed on a timely basis.  It was not my intention to disregard the law. This transaction slipped through without a form being mailed in.  These transactions are not common in our business and we have not had an acurate [*sic*] way of tracking them in the past.  However, I have spoken to the company that designed our computer software about devising a way of tracking customers that require a Form 8300 so that this will not happen in the future.  Please take this into consideration when assessing penalties.

Govt Ex. 6(b).   Later, on August 5, 2002, Mrs. Purser met with Agent Carter and Walter Matyzyck to discuss reasons why penalties should not be assessed.  During that meeting, Mrs. Purser described the procedures that she put in place after the 1997 compliance examination in an effort to track cash transactions.  C. Purser Dep. 92.

Mrs. Purser left the August meeting expecting that IRS would assess some penalty, but she did not know how much the penalty would be.  Id. at 98.

By letter dated October 2, 2002, IRS notified Purser that it would assess a penalty of $350 for filing seven late forms.  Govt. Ex. 7(b).  Purser paid this penalty on November 12, 2002.   Meanwhile, on October 23, 2002, Agent Carter issued a report proposing penalties for intentional disregard of filing requirements as to six transactions, for a total penalty of $158,546.   Purser appealed the proposed assessment.   The appeal was denied as to the assessments for the five 2001 transactions, but IRS decided not to assess the maximum penalty for the 2000 transaction, but assessed $100 for late filing and untimely customer notification.  IRS ultimately assessed a penalty of $125,000 for the five Form 8300 violations and $7,542 for the five customer notification violations.  With accrued interest the total penalty was $135,171.47, which Purser paid.  After IRS denied its request for a refund of the penalties, Purser filed the present lawsuit.


## LEGAL STANDARDS

Where a taxpayer challenges the assessment of a penalty by the IRS, the taxpayer has the burden of proving that the assessment was erroneous.  See Sandvall v. Commissioner, 898 F.2d 455, 459 (5th Cir. 1990); DeGuerin v. United States, 214

F.Supp.2d 726, 733-34 (S.D.Tex. 2002).  Purser therefore has the burden of proving that it did not intentionally violate the disclosure requirements of Section 6050I.

The disclosure requirements of Section 6050I were enacted in 1984 in an effort to enable IRS to monitor large cash transactions and detect money laundering schemes.  United States v. Gerner, 873 F.Supp. 729, 731 (D. Mass.) *aff'd*, 65 F.3d 963 (1st Cir. 1995); Bickham Lincoln-Mercury Inc. v. United States, 168 F.3d 790, 793 (5th Cir. 1999).  Under Section 6050I(a), a business must file a Form 8300 to report any transaction for which it receives "more than $10,000 in cash in 1 transaction (or 2 or more related transactions)."  The business must also notify the customer who made the payment that a Form 8300 has been filed.  26 U.S.C. § 6050I(e).

Penalties for failure to file the Form 8300 disclosure are set forth in Section 6721 of the Internal Revenue Code.  Ordinarily, the penalty for such a failure is "$50 for each return with respect to which such a failure occurs, but the total amount imposed on such person for all such failures during any calendar year shall not exceed $250,000."  26 U.S.C. § 6721(a)(1).  Failures subject to the penalty include "any failure to file an information return with the Secretary on or before the required filing date."  26 U.S.C. § 6721(a)(2)(A).

Penalties for failure to send the customer notification statement are set forth in Section 6722 of the Code.  Section 6722(a) provides that for failure to furnish a timely

7

statement the offending person "shall pay a penalty of $50 for each statement with respect to which such a failure occurs, but the total amount imposed on such person for all such failures during any calendar year shall not exceed $100,000."

Both Sections 6721 and 6722 provide greatly enhanced penalties where the failure is due to "intentional disregard" of the filing or notification requirements. If the failure to file the Form 8300 is due to intentional disregard, the prescribed penalty is the greater of $25,000 or the amount of cash received in the transaction, up to $100,000. 26 U.S.C. § 6721(e)(2)(C). If the failure to file the customer notification statement is due to intentional disregard, the prescribed penalty is "10 percent of the aggregate amount of the items required to be reported correctly." 26 U.S.C. § 6722(c)(1)(A). Although the Internal Revenue Code does not define the term "intentional disregard," its accompanying regulations supply a definition. The regulations, at 26 C.F.R. § 301.6721-1(f)(2), define intentional disregard to mean a "knowing or willful" failure to file a timely return or to include correct information. "Whether a person knowingly or willfully fails to file timely or fails to include correct information is determined on the basis of all the facts and circumstances in the particular case." Id. With regard to the facts and circumstances to be considered, the regulation provides:

The facts and circumstances that are considered in determining whether a failure is due to intentional disregard include, but are not limited to–

(i) Whether the failure to file timely or the failure to include correct information is part of a pattern of conduct by the person who filed the return of repeatedly failing to file timely or repeatedly failing to include correct information;

(ii) Whether correction was promptly made upon discovery of the failure;

(iii) Whether the filer corrects a failure to file or a failure to include correct information within 30 days after the date of any written request from the Internal Revenue Service to file or to correct; and

(iv) Whether the amount of the information reporting penalties is less than the cost of complying with the requirement to file timely or to include correct information on an information return.

26 C.F.R. § 301.6721-1(f)(3).  As the regulation itself states, these considerations are not an exhaustive or conclusive list.  The suggested factors are "among any of a number of factors which may be considered in concluding that a failure to file was due

to an intentional disregard." Kruse, Inc. v. United States, 213 F.Supp.2d 939, 944 (N.D.Ind. 2002).

In cases dealing with enhanced penalties for "intentional disregard,' courts have applied the regulation and found that the term "requires only that a party act voluntarily in withholding required information, rather than accidentally or unconsciously." Gerald B. Lefcourt, P.C. v. United States, 125 F.3d 79, 83 (2nd Cir. 1997). A finding of intentional disregard does not require proof of bad faith or fraudulent intent. Id. See also Tysinger Motor Co., Inc. v. United States, 428 F.Supp.2d 480, 484-85 (E.D.Va. 2006). Nevertheless, "when a taxpayer makes a good faith effort to comply with tax regulations, intentional disregard penalties are less likely to be upheld." United States v. Quality Medical Consultants, Inc., 214 B.R. 246, 249 (M.D.Fla. 1997). Thus, "harsh penalties should not be assessed 'if a taxpayer is misguided and unsophisticated in the realm of tax law, and acts in good faith.'" Id.(quoting Hansen v. Commissioner, 820 F.2d 1464, 1469 (9th Cir. 1995).

The statutory context and the existing case law indicate that "intentional disregard" is a high standard of culpability, requiring much more than merely negligent or reckless disregard. One important indication of the degree of culpability required is the extreme harshness of the penalty. In ordinary cases of failure to file the Form 8300, the penalty is fifty dollars per violation. In the event of intentional

disregard, however, the penalty increases by fifty thousand percent, to $25,000.  The statute provides no middle ground between the two.  The statute also suggests that "willful neglect" is not sufficient to warrant the heightened penalty.  Section 6724 of the Code provides that "[n]o penalty shall be imposed under this part with respect to any failure if it is shown that such failure is due to reasonable cause and not to willful neglect."  26 U.S.C. § 6724(a).  By contrasting "reasonable cause" with "willful neglect," this waiver provision suggests that "willful neglect" is the condition for the ordinary, fifty-dollar penalty.  "Intentional disregard," must by inference be something greater than willful neglect.[2]

The relatively few reported cases involving penalties under Section 6721 or 6722 also indicate that a taxpayer must demonstrate more than merely poor record-keeping practices to merit the heightened penalty.  In Lefcourt (125 F.3d 79), for example, the plaintiff taxpayer was an attorney who intentionally withheld information from Form 8300 disclosures based on an erroneous claim of attorney-client privilege.[3]  The court found that his decision to withhold the information was intentional and that because his "dubious" interpretation of the attorney-client

---

[2]"Willful neglect" seems more consistent with the heightened penalty provisions under the Fair Labor Standards Act or the willfulness requirements of 26 U.S.C. § 6672 (establishing penalties for the willful failure to collect withholding taxes) than with the "intentional disregard" provisions of Section 6721 and 6722.  As such, the FLSA and Section 6672 cases cited in the Government's Brief are somewhat unpersuasive.

[3]Notably, the plaintiff in Lefcourt was an attorney who was paid in cash to defend a client facing federal drug and money laundering charges.  125 F.3d at 81.

privilege had previously been rejected by authoritative precedent, there was no reasonable basis for his failure to provide the information.  125 F.3d at 88.  Similarly, in DeGuerin (214 F.Supp.2d 726), the plaintiff taxpayers were lawyers who withheld information based on an assertion of privilege.  The Texas district court relied on Lefcourt to find that they intentionally withheld the information and that existing law gave no reasonable basis to believe that the required information was protected by the privilege.  In a third case, Bickham Lincoln-Mercury (168 F.3d 790), the plaintiff taxpayer had previously pled guilty to criminal charges for failure to file Form 8300, and evidence indicated that the taxpayer withheld data from the IRS in a deliberate effort to assist a customer who wanted to conceal the amount of cash paid for a car. 168 F.3d at 792.[4]  In each of these three cases, the taxpayer deliberately, knowingly withheld information or avoided filing the Form 8300 for improper purposes.

In cases involving merely negligent or reckless failures to file required disclosures, several courts have ordered IRS to return penalties assessed for intentional disregard.  For example, in Kruse v. United States (213 F.Supp.2d 939), a jury found that the IRS had improperly imposed the penalties against an automobile auction business for failing to file Form 8300.  The district court denied the Government's motion for judgment as a matter of law, finding that there was

---

[4]It interesting to note that in Bickham Lincoln-Mercury the punishment for the criminal violation was a fine of $5,000, while the civil penalty imposed by the IRS was $27,000.

"overwhelming evidence" that the taxpayer "truly believed [it] was not required to file the Form 8300s because it was in the business of auctioning cars."  213 F.Supp.2d at 940.   Among the evidence considered by the jury was: (1) testimony from the purchaser that he was not trying to conceal anything by purchasing the cars and that he was not trying to keep the government from knowing that he paid cash for the cars; (2) evidence that "everything was kept out in the open regarding the auction process and the keeping of records and the identity of buyers was never hidden;" (3) a stipulation that the taxpayer deposited all the cash in banks which were themselves required to report large cash transactions; and (4) evidence that showed the taxpayer "firmly believed that the Form 8300s did not apply to the auction business."  213 F.Supp.2d at 943, 944.

In Quality Medical Consultants, Inc. v. United States, 192 B.R. 777 (M.D.Fla. 1995), *aff'd* 214 B.R. 246 (M.D.Fla. 1997), the bankruptcy court sustained the bankrupt taxpayer's objection to an IRS assessment of penalties under Section 6721 and 6722 for intentional disregard of the requirement to file 1099 forms.  The court noted that "[i]ntentional disregard of tax statutes and regulations generally [involves] 'flagrant abuses of the tax system.'" 192 B.R. at 786 (quoting Crowd Management Servs., Inc. v. United States, 889 F.Supp. 1313, 1317 (D.Or. 1995).  The court found that the accounting employee who was responsible for preparing and filing the

information returns made a "mistake based on inexperience," in that she was unaware that she was required to send 1099 forms to corporations engaged in medical and health care services.  192 B.R. at 787.  "A mistaken belief as to what the law requires does not constitute intentional disregard."  <u>Id</u>.  In addition, the court found with regard to returns for a subsequent year that the taxpayer's "employees were subject to overwhelming distractions, including lawsuits, a bankruptcy filing and two upper-level management changes.  These distractions prevented the [taxpayer] from completing normal business activities, including the filing of the Returns."  <u>Id</u>.  In affirming the bankruptcy court on appeal, the Florida district court noted that the taxpayer had nothing to gain by avoiding or delaying its filing of the returns.  As the court reasoned, "if [the taxpayer] had intentionally neglected to file information returns solely for financial gain, the Court would be inclined to agree with penalties for intentional disregard.  However, [the taxpayer] suffered from a myriad of problems that hindered it from complying."  214 B.R. at 250.

The most factually similar case to the present case is <u>Tysinger Motor Co.</u> (428 F.Supp.2d 480), in which the district court, sitting as finder of fact in a bench trial, determined that intentional disregard penalties were unwarranted and found in favor of the plaintiff taxpayer.  In that case the plaintiff, Tysinger, was a family-owned automobile dealership.  The IRS conducted a compliance review in 1992 and found

14

that Tysinger had not reported several transactions involving cash in excess of $10,000.   In 1996, IRS conducted a second review, in which it again found that Tysinger had been "inconsistent in its filing of Form 8300." 428 F.Supp.2d at 481. After the second review, Tysinger's chief financial officer signed an acknowledgment that he was aware of the requirement to file the Form 8300 and of the possible civil and criminal penalties that could result.  Tysinger then sought to implement a system that would identify cash transactions and "spark the filing of a Form 8300." Id.  The system apparently did not work, because during a third compliance review in 2001, IRS discovered that Tyisinger had only filed Form 8300 disclosures for four of the eight transactions in 1999 and 2000 that involved cash in excess of $10,000.

IRS assessed a penalty of $100,000 for the violations.  After a bench trial, the district court ordered IRS to refund the penalties, finding that Tysinger had carried its burden of proving it did not intentionally disregard its obligation to file Form 8300 in the four transactions.  Instead, the court found that "the failures to report were simply mistakes." Id. at 485.  IRS had  based its decision to impose the heightened penalties primarily upon Tysinger's prior failures to comply.  The court rejected this reasoning as contrary to the language of the statute:

> In recommending the maximum fine, Agent Young relied upon Tysinger's prior defaults and its executives' general knowledge of Form 8300. Given this predicate, the IRS considered any subsequent failure to

15

> file automatically willful. Such an approach impermissibly changes an
> intent-based statute into one of strict liability. Because this is contrary to
> the plain language of the statute, the IRS' initial reasoning is flawed.

Id. at 485.  The court also rejected the Government's later argument that Tysinger's

CFO, Zimmerman, intentionally did not file the forms, based on testimony from an

employee that she had advised Zimmerman of the necessity to file the forms by

leaving sticky notes on his telephone and placing a note in one folder saying, "Please

fill out a form 8300."  Zimmerman testified that he had been extremely busy in 1999

and 2000 with Tysinger's Nissan dealership, and that he was frequently out of the

office.  The court credited Zimmerman's testimony, finding that

> [the employee's] notes could easily have been overlooked in such a
> hectic environment.  This explanation makes more sense than the
> alternative explanation, especially when one considers that neither Mr.
> Zimmerman nor the dealership had anything to gain from not filing the
> Form 8300s.  Indeed, Tysinger filed the form in four of the eight
> instances where it was required.

Id. at 485-86.  Ultimately the district court, as trier of fact, determined that the failures

were the result not of intentional disregard, but of sloppy record-keeping and an

inadequate compliance system:

> Sloppiness is not the same as willfulness, particularly in a case such as
> this one where the business had extraordinarily few cash transactions.
> Less than one-half of one percent (8 out of 3000) of Tysinger's sales

during 1999 and 2000 involved reportable amounts of cash. It is not
surprising that the employees on the front lines failed to cross every "t"
and dot every "i" on those rare occasions when down payments were
made with cash.

Id. at 486.

## ANALYSIS OF THIS CASE

### A.    Penalties for Intentional Disregard

There are genuine issues of material fact in this case that prohibit judgment as
a matter of law.  Based on the evidence submitted by the parties, a reasonable trier of
fact could find, as the court did in Tysinger, that Purser's failure to file Form 8300
disclosures for the transactions in 2001 was the result of poor bookkeeping
procedures, but not of intentional disregard for the law's requirements.  A trier of fact
could also interpret the evidence to find that Purser's attempts to comply with the
disclosure requirements were so poor as to demonstrate intentional disregard.
Interpreting Purser's intent will require judgments as to the credibility of evidence and
the inferences to be drawn therefrom.  Accordingly, the Court cannot grant summary
judgment in Purser's favor, and must submit the case for resolution at trial.

As it did in Tysinger, IRS in this case based its finding of intentional disregard
on Purser's prior default and Mrs. Purser's general knowledge of Form 8300.  It
contends that Purser maintained "lax procedures" after the 1997 compliance

17

examination, and that its "compliance record demonstrates a pattern and practice of failing to comply with Section 6050I's filing requirements."  Def's Mem. in Support of M. for S.J. (Doc. 26) 2.  It is undisputed that the 1997 compliance examination revealed that Purser was unaware of the reporting requirements of Section 6050I and therefore lacked internal controls to identify reportable transactions.  IRS identified four transactions from 1996 that should have been reported on Form 8300.  The IRS agent who conducted the examination counseled Mrs. Purser orally and in writing about the requirements for filing Form 8300 and the accompanying customer notification.  Thus, after 1997 Purser was aware of its obligations.

Purser's failure to file any Form 8300 disclosures in 2001 may be construed as a pattern of conduct that reveals intentional disregard of filing requirements, as provided in the first factor suggested by the regulation at 26 C.F.R. § 301.6721-1(f)(3).  IRS has identified at least four and possibly five transactions in 2001 that should have been disclosed, as well as one transaction in 2000.[5]  The fact that Purser completely failed to file any disclosures in 2001, combined with its undisputed knowledge of the reporting requirements, can create an inference that Purser knew of its obligations and intentionally disregarded them.

---

[5]As is discussed below, there are genuine issues of material fact as to whether any disclosure was required for the purchase by James Garnto.

Although the Government's evidence of a pattern of failure to file is enough to create a genuine issue of material fact as to intentional disregard, it is not sufficient to warrant summary judgment in favor of the Government, in light of substantial evidence that Purser's failures were not due to intentional disregard, but were simply mistakes resulting from unsophisticated office procedures.  The evidence in this case is comparable to the evidence offered in <u>Tysinger</u>, based upon which a reasonable trier of fact (a federal judge) found that penalties were unwarranted.

Whereas the Government has presented evidence under the first factor suggested in the regulation, Purser has presented evidence under the second, third, and fourth factors to show that its failures were not intentional.  The second and third factors suggested by the regulation relate to a correction of a failure to file.  The regulation directs IRS to consider whether correction was promptly made upon discovery of the failure and whether the filer corrects the failure within 30 days of a written request to correct by IRS.  The evidence shows that Purser discovered its failure to file when Mrs. Purser began to review her records in response to notice of the compliance examination that was sent in late March 2002.  Mrs. Purser filed eight Form 8300 disclosures in April, before the compliance examination.  The Government argues that Purser's corrective action is not worthy of credit because it was only taken in response to the threat of another examination.  This argument goes to the weight of

Purser's corrective action as evidence of its intent.  The regulation, at 26 C.F.R. §

301.6721-1(f)(3)(iii), suggests that corrective action may indicate a lack of intent to

disregard even when it is undertaken in response to a specific demand by IRS.

In addition to evidence of corrective action, the regulation suggests that IRS

consider whether the cost of compliance was less than penalties for non-compliance.

Although there is no specific evidence as to the cost of filing a Form 8300, it appears

to be minimal.  Section 6050I does not require Purser to pay any additional tax; it

merely requires Purser to fill out a form and mail a letter to the customer.  In this case,

as in Tysinger, neither Mrs. Purser nor the dealership nor any of the customers

involved had anything to gain by failure to file.

Also as in Tysinger, Purser's intent to comply with the law "is demonstrated by

its efforts to set up a system that would identify reportable transactions."  Tysinger,

428 F.Supp.2d at 485.  Following the 1997 compliance examination, IRS specifically

emphasized the need for Purser to keep records identifying "the type of payment

received from your customers (i.e. cashiers check, money order, business check,

personal check, etc.)."  Govt. Ex. 2(c).  Purser did so.  As the Government concedes

in its Statement of Undisputed Material Facts, Mrs. Purser attempted to comply with

the requirements of Section 6050I by developing "an excel spreadsheet that she

intended to utilize to track any sales requiring the filing of a Form 8300."  Govt's

Statement of Undisputed Material Facts (Doc. 27), ¶ 22.  Consistent with the advice given by Agent Joiner following the 1997 compliance examination, this spreadsheet "listed the sales information, the payment method (cash, check or money order), [and] the amount of the down payment for a particular day." Id. at ¶ 23.  This spreadsheet did not, however, flag particular transactions for a Form 8300 filing, and did not distinguish between the types of checks received. Id.  The record also shows that after the 1997 examination Mrs. Purser instructed her cashiers that it was "real important" to "write down what was cash, what was actual physical cash, what was checks, make copies of our checks and put them in our files, because [she] had to account for that." Happoldt Dep. 14.

The Government characterizes Mrs. Purser's efforts to comply with Section 6050I as "lax procedures." Id. at ¶ 29.  It thus attempts to contrast the efforts made by Mrs. Purser with the more-sophisticated system put in place by the CFO Zimmerman in Tysinger.  However, a finder of fact would be entitled to take into account that the Pursers were considerably less sophisticated than the parties in Tysinger.  Tysinger's president was a third-generation car dealer who was also a member of the Virginia State Bar and had formerly practiced law with a "prominent" firm. Tysinger, 428 F.Supp.2d at 481.  Zimmerman was "an accountant who had practiced with a CPA firm that specialized in automotive dealerships." Id.  By

contrast, Purser is a classic "mom and pop" business.   Mrs. Purser, who was responsible for almost all the administrative activities of Purser, had a GED.  C.Purser Dep. 9.  She relied primarily on an "old timey" record-keeping system based primarily on hand-written ledger cards as to each customer and transaction.  Happoldt Dep. 10. She also used computer software produced specifically for the used-car business by Wayne Reaves.   C. Purser Dep. 41-42.   This software, however, did not have a mechanism for keeping track of sales subject to Form 8300 disclosure requirements. Id.   After the 2002 examination, Mrs. Purser spoke with Wayne Reaves about developing an update to the software to track Form 8300 transactions.  C.Purser Dep. 120; J. Purser Dep. 55.  Purser currently uses that updated software.

Although it is clear that Mrs. Purser's efforts to develop a system to comply with Section 6050I proved ineffective, it is not clear that the "lax procedures" were the result of intentional disregard of the law.  As the court observes in Tysinger, "[s]loppiness is not willfulness."  428 F.Supp.2d at 486.  In this case, as in Tysinger, Purser's business "had extraordinarily few cash transactions."  Id.  For 2001 there is evidence of at most five transactions, out of as many as 960 sales, involving reportable amounts of cash.  Mrs. Purser, lacking accounting sophistication, attempted to develop a system to keep up with these rare transactions.  A trier of fact could find that these

efforts, ineffective though they were, indicated an intent to comply with the law, not an intent to disregard it.

There is also evidence that numerous business and personal concerns distracted Mrs. Purser in 2001, hindering her ability to monitor compliance in a system that depended greatly upon her personal vigilance. The evidence in this case shows that Mrs. Purser was exclusively responsible for the administrative aspects of the business, while her husband was exclusively responsible for the sales aspects. In 2001, both Mr. and Mrs. Purser experienced significant health problems. Between March and May Mrs. Purser underwent oral surgery that kept her out of work "off and on" for several weeks. C.Purser Dep. 107. As a result of the procedures, she "was in a lot of pain, sedated quite a bit, and . . . couldn't perform her usual duties." J.Purser Dep. 49. She also underwent inpatient urinary surgery that kept her out of work for several days. J.Purser Dep. 51. Mr. Purser, who turned 65 in 2001, had his own health concerns. In December 2000 he underwent a heart catheterization. J. Purser Dep. 26. In May 2001 he had surgery for kidney stones after an "ongoing battle" for two months. Id. at 27. He also had rotator cuff surgery, but could not remember when that surgery took place. Id. at 26.

The evidence indicates that the Pursers' health problems kept them out of work several times throughout the year, and often limited their ability to work when they

were able to be there.  When Mrs. Purser was out of work or unable to work full time, Mr. Purser had to oversee many of her duties, though he had minimal knowledge of the accounting and bookkeeping procedures.  J.Purser Dep. 50-53.  When Mr. Purser was out of work or unable to work full-time, Mrs. Purser had to oversee his duties in addition to her own.  These duties included supervising sales, advertising, and hiring new service personnel.  C.Purser Dep. 110.  Both Mr. and Mrs. Purser had additional responsibilities during 2001, as Mr. Purser was overseeing the construction of a new body shop and Mrs. Purser was attempting to transition from manual bookkeeping to a computerized bookkeeping program.  C.Purser Dep. 112.  A reasonable trier of fact might find that such pressures and distractions established even more of a "hectic environment" than the one Mr. Zimmerman experienced in <u>Tysinger</u>, and find accordingly that Mrs. Purser's failure to file Forms 8300 for that year were inadvertent, rather than willful or intentional.

In summary, a trier of fact will have to weigh the evidence and the credibility of the parties and decide whether Purser's failure was the result of intentional disregard.  Supporting the IRS' assessment of penalties is evidence that Purser knew of its obligations and failed to comply with them.  Supporting Purser's request for a refund is evidence that its failure was the result of an unsophisticated and somewhat antiquated accounting system that was unable to track the very small proportion of

transactions requiring a disclosure.  Despite attempts to adjust this system after the 1997 compliance examination, it still relied primarily upon the vigilance of Mrs. Purser, who was distracted during much of 2001 by health and business concerns. Between these two different accounts of Purser's compliance failures there are genuine issues of material fact that preclude summary judgment.

### B.    Garnto Transaction

With regard to one specific transaction, the sale to James S. Garnto on June 23, 2001, there are genuine issues of material fact as to whether a Form 8300 was required at all.  Mrs. Purser has testified that Mr. Garnto paid for his vehicle with a cashier's check for $19,308.  C.Purser Dep. 64-65.  Although there is no copy of the check available, Mrs. Purser's testimony is supported by documentary evidence in the form of a deposit slip dated 6-25-01, which shows a cash deposit of $397.94 and four deposited checks, including a check labeled "J. Garnto" in the amount of $19,308.14. Govt. Ex. 5(c).  As defined in Section 6050I and in the accompanying regulation at 26 C.F.R. 1.6050I-1(c)(1)(ii), the term "cash" does not include a cashier's check or other instrument with a face amount greater than $10,000.  A transaction involving a cashier's check for $19,308 would not require a Form 8300, as the bank issuing the check would be required to file a disclosure, rather than the business accepting the check.

The Government responds that Mr. Garnto has testified by way of affidavit that he paid "cash" for the vehicle he purchased.  In his affidavit, found in the record at Doc. 24, Ex. G, Mr. Garnto states that his purchase of the vehicle "was paid in cash upon the day of closing."  His affidavit does not necessarily contradict the testimony of Mrs. Purser, however, given that the term "cash" has a degree of ambiguity in everyday conversation.  It can be used to denote actual, hard currency, but it is also commonly used, particularly in the context of an automobile purchase, to connote a payment that is not financed but is fully paid from the purchaser's own funds.  Thus a purchaser who purchases a vehicle with a personal check from his own bank account might state that he paid "cash" for the vehicle, as opposed to buying it in installments. It is not clear what Mr. Garnto means by the term in his affidavit.  Besides the ambiguous testimony in Mr. Garnto's affidavit, the Government has presented no evidence that Purser received cash for this transaction, as defined by the regulation.  At best, the Government has shown a genuine issue of material fact as to whether the Garnto transaction required a Form 8300 disclosure.

## CONCLUSION

Because there are genuine issues of material fact with regard to both the IRS' authorization to assess penalties for disregard and the obligation of Purser to file a Form 8300 for the Garnto transaction, the Court cannot grant judgment as a matter of

law.   Accordingly, Purser's Motion for Summary Judgment (Doc. 20) and the Government's Motion for Summary Judgment (Doc. 25) are hereby **DENIED**.  This case will be scheduled for trial on the next available trial calendar.

      **SO ORDERED** this 29th day of September, 2008.

                           S/ C. Ashley Royal
                           C. ASHLEY ROYAL
                           United States District Judge

chw